# I jIN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 09-308 |
| | ) | Civil No. 15-1086 |
| VASILIA BERGER, | ) | |
| a/k/a VASILIA KLIMANTIS, | ) | |
| Petitioner. | ) | |
| | ) | |

## <u>OPINION</u>

CONTI, Chief District Judge

## I. <u>Introduction</u>

On December 3, 2015, this court issued an opinion and order denying the motion to vacate filed pursuant to 28 U.S.C. § 2255 (the "§ 2255 motion") by petitioner Vasilia Berger ("petitioner") because it was untimely filed. (ECF Nos. 141, 142.) The court explained that under § 2255, a petitioner has one-year from the date his or her conviction becomes final to file a § 2255 motion unless he or she can show one of the circumstances set forth in § 2255(f)(2)-(4) exists in his or her case. (ECF No. 141 at 3.) Petitioner in this case filed the § 2255 motion twenty-nine months after the judgment of conviction entered against her became final, and did not show that one of the circumstances set forth in § 2255(f)(2)-(4) existed in her case. (<u>Id.</u> at 3.) In other words, the court held that petitioner's § 2255 motion was barred by the applicable one-year statute of limitations. (<u>Id.</u> at 1.)

Pending before the court is petitioner's motion for reconsideration of the court's order dated December 3, 2015, denying her § 2255 motion because it was untimely filed. (ECF No. 143.) Petitioner in the motion for reconsideration argues that this court should reconsider its decision denying her § 2255 motion as untimely filed because she "diligently tried to

purs[u]e her 2255 after her sentencing" and "due to time constraints…did not have time" to review the legal materials provided to her by her former counsel. (ECF No. 143.) The government argues petitioner's motion for reconsideration should be denied because she could have discovered the documents she references in her § 2255 motion and motion for reconsideration by exercising due diligence while her case was pending before this court. (ECF No. 145 at 2.) For the reasons stated herein, petitioner's motion for reconsideration will be denied because she did not show that a manifest injustice would result if the court did not reconsider its holding that her § 2255 motion was untimely filed.

## II. Standard of Review

"Motions for reconsideration may be filed in criminal cases." United States v. Fiorelli, 337 F.3d 282, 286 (3d Cir. 2003); see also United States v. Bennett, 514 F. App'x 151, 153-54 (3d Cir. 2013). The purpose of a motion to reconsider is "to correct manifest errors of law or fact or to present newly discovered evidence." Bootay v. KBR, Inc., 437 F. App'x 140, 146-47 (3d Cir. 2011) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of." Waye v. First Citizen's Nat'l Bank, 846 F.Supp. 310, 314 (M.D. Pa. 1994) (citing Davis v. Lukhard, 106 F.R.D. 317, 318 (E.D. Va. 1984)). In order to be successful on a motion for reconsideration, the movant must demonstrate a "definite and firm conviction that a mistake has been committed," or that the court overlooked arguments that were previously made. United States v. Jasin, 292 F.Supp.2d 670, 676 (E.D. Pa. 2003). There are three circumstances in which a court may grant a motion for reconsideration: (1) there has been an intervening change in the law; (2) new evidence is now available that was

not available when the court entered judgment; or (3) there is a need to correct a clear error of law or fact, or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 667 (3d Cir. 1999).

### III. The Applicable Statute of Limitations

There is a one-year statute of limitations period for filing § 2255 motions. 28 U.S.C. § 2255(f). The time at which the statute of limitations begins to run depends upon the facts of a given case. Id. Section 2255(f) provides:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). Based upon the foregoing provision, the statute of limitations begins to run—at the earliest—the date on which the judgment of conviction becomes final. Id. The statute of limitations may begin to run at a later date, however, if a petitioner can show that one of the circumstances set forth in § 2255(f)(2)-(4) exists in his or her case. Id.

### IV. Discussion

Petitioner argues in her motion for reconsideration that this court should reconsider its decision to dismiss her § 2255 motion as untimely filed because one of the circumstances set

forth in § 2255(f)(2)-(4) exists her case, and, therefore, her § 2255 motion was *timely* filed. Petitioner does not argue that there has been an intervening change in the law or that new evidence is now available that was not available when the court issued the order denying her § 2255 motion because it was untimely filed. The court will, therefore, address petitioner's motion for reconsideration based upon whether there is a need to prevent manifest injustice. Max's Seafood Café, 176 F.3d at 667.

Petitioner does not contest the court's decision that her § 2255 motion was filed more than one year, i.e., twenty-nine months, after the judgment entered against her became final. 28 U.S.C. § 2255(f)(1). Petitioner does not specify, however, which subsection of § 2255(f)(2)-(4) applies to her case. Based upon a review of petitioner's submissions, she does not set forth any argument or evidence there was an impediment to making a timely motion, § 2255(f)(2), or that the Supreme Court recognized a new right, which is retroactively applicable to this case, § 2255(f)(3).

The court will, therefore, determine whether manifest injustice will result if the court does not reconsider its decision that petitioner's § 2255 motion was untimely filed by analyzing whether § 2255(f)(4) is applicable to petitioner's case. The court previously held that with respect to § 2255(f)(4), it could not discern any facts supporting a claim that could only have been discovered through the exercise of due diligence at a point in time after the date on which the judgment of conviction entered against her became final. Petitioner argues this court should deem her § 2255 motion timely filed under § 2255(f)(2)-(4) for two reasons, each of which will be discussed below.

### A. Petitioner argues that from March 2013 until August 2014 she "diligently tried to purs[u]e" filing a § 2255 motion. (ECF No. 143 at 1.)

Petitioner in her motion for reconsideration argues that "for 1 year straight" she "repeatedly" called the office of the Federal Public Defenders "to get help." (ECF No. 143 at 1.) According to petitioner, the office of the Federal Public Defenders "never offered the Defendant any help as to requesting a court appointed attorney or for filing an appeal pro se." (Id.) Petitioner raised the same arguments in her original § 2255 motion, i.e., that she repeatedly called the office of the Federal Public Defenders for assistance, they informed her they could not represent her, and she was not aware that she could file an appeal pro se. (ECF No. 139-1 at 22.)[1] This court rejected those arguments as a basis to apply § 2255(f)(4) to this

---

[1] Petitioner also argued in her § 2255 motion that she did not have money to hire an attorney to file an appeal and she did not know that she could file an appeal as a pro se litigant. (ECF No. 139 at 45, 49, 51, 57, 64, 81, 84, 93, 97.) The court did not find that argument was a basis upon which to apply § 2255(f)(4) to this case. (ECF No. 137 at 3-4 ("The court—having reviewed and considered petitioner's voluminous § 2255 motion and the arguments contained therein—cannot discern any facts supporting a claim that could only have been discovered through the exercise of due diligence at some point after the judgment became final in this case.").) Petitioner did not provide the court a basis upon which to reconsider that decision.

Petitioner argued that she did not have money to hire an attorney to file an appeal on her behalf. Petitioner in her motion for reconsideration asserts, however, that in June 2014, she hired Marc Daffner ("Daffner") to file an appeal on her behalf and paid him $11,500 for his services. (ECF No. 143 at 3-4.) Petitioner does not explain how her financial circumstances changed between March 5, 2013, the date on which she was sentenced, and June 2, 2014, the date on which she retained Daffner to represent her. Under those circumstances, the court is not convinced that petitioner did not have money to hire an attorney prior to the expiration of her rights to appeal or file a § 2255 motion.

On March 5, 2013, the court reviewed petitioner's appeal rights at the conclusion of her sentencing hearing. (H.T. 3/5/2013 (ECF No. 111) at 71-72.) The court stated, among other things:
> If you're unable to pay the costs of an appeal, you may apply for leave to appeal in forma pauperis. If you so request, the Clerk of Court will prepare and file a notice of appeal on your behalf.

(Id. at 72.) The court then asked petitioner: "[d]o you understand those appeal rights?" (Id.) Petitioner responded: "Yes, Your Honor." (Id.) Under those circumstances, the court is not convinced that petitioner did not know she could ask the Clerk of Court to file an appeal on her behalf if she was unable to pay the costs of an appeal.

case because petitioner's allegations against the Federal Public Defender do not show that facts supporting one of petitioner's claims could only have been discovered through the exercise of due diligence on a date after the date on which the judgment of conviction entered against her became final. 28 U.S.C. § 2255(f)(4). Petitioner did not provide the court a basis to reconsider that decision. Under those circumstances, a manifest injustice would not result if the court did not reconsider its decision denying petitioner's § 2255 motion because it was untimely filed.

> **B. Petitioner argues that she "did not have time to open [a] box" given to her by her legal counsel in or around March and April 2014, which contained documents upon which her § 2255 claims are based, until she was incarcerated. (ECF No. 143 at 2.)**

On March 5, 2013, petitioner was sentenced by this court. (ECF No. 108.) Petitioner's counsel argued at the time of sentencing that the court should consider the extent of petitioner's cooperation with the government in this case in order to fashion a fair and just sentence under 18 U.S.C. § 3553(a). (ECF No. 89.) On October 12, 2012, and February 15, 2013, petitioner's counsel filed with the court numerous documents in support of the argument that the court should consider the extent of petitioner's cooperation with the government. (ECF Nos. 89, 106.) Petitioner asserts in her motion for reconsideration that:

- approximately one year after her sentencing date, in or around March and April 2014, she was contacted by her attorney's office and asked whether she wanted to retrieve her legal files, which were stored in a box, from that office (ECF No. 143 at 2);

- she retrieved the box that contained her legal files but did not examine its contents; indeed, she did not open the box (Id.);

- she "did not have time to open the box because [she] was due to report to prison on May 1, 2014," and Jay Berger, her "ex-husband was placed in Hospice care around the same time" (Id.);

- she "placed the box in her garage…[d]ue to time restraints, parental obligations and [her] self[-]surrender prison date" (Id.);

- her ex-husband's belongings were placed in her garage when he passed away (Id.);

- her mother's belongings were placed in her garage when her mother moved into her home to care for her daughter (Id.);

- after petitioner was incarcerated she asked her sister to retrieve the box from her garage and examine its contents (Id.);

- petitioner's sister could not move the boxes and furniture in the garage, i.e., the belongings of petitioner's ex-husband and mother, to retrieve the box (Id.);

- petitioner while incarcerated asked her employee to retrieve the box from her garage (Id.);

- the employee retrieved the box from the garage and emailed petitioner a list of a description of the documents contained in the box (Id.);

- petitioner requested that her employee send her certain documents contained in the box, including the plea agreement of her ex-husband, who engaged in criminal conduct similar to the criminal conduct engaged in by petitioner, and a letter sent to her counsel from the Assistant United States Attorney ("AUSA") who prosecuted her case (Id.); and

- the letter from the AUSA to her counsel explained the type of cooperation the AUSA would consider to be "substantial assistance to the government" (Id.; ECF No. 143-2.)

**1. Petitioner contradicted herself with respect to when she first examined the contents of the box that contained her legal files.**

The allegations made by petitioner in her motion for reconsideration contradict the allegations made by petitioner in her § 2255 motion. (ECF No. 139 at 65.) Petitioner in her § 2255 motion asserts:

> When Counsel closed his office in 2014, Counsel asked Movant to pick up her legal box. **Movant went through the legal box** and Movant noticed that Counsel had a copy of Movants [sic] co-defendant, Jay Berger's Plea Agreement. Jay Berger received his 5k1 for assisting law enforcement agencies in an investigation against Howard Reck.
>
> …
>
> This was the first time that Movant was aware of what Jay Berger's plea agreement stated. Movant brought the plea agreement with her to prison along with other documentation from the legal box Counsel asked her to pick up.

(Id. (emphasis added).) If—as petitioner alleged in her § 2255 motion—she examined the contents of the box containing her legal files prior to her incarceration on May 21, 2014, her § 2255 motion filed on August 18, 2015, was untimely filed. Under those circumstances, a manifest injustice would not result if this court did not reconsider its decision that petitioner's § 2255 motion was untimely filed.

### 2. Petitioner could have through the exercise of due diligence discovered her ex-husband's plea agreement and the letter written by the AUSA to her counsel with respect to her cooperation efforts prior to her incarceration.

Even if this court disregards the petitioner's inconsistencies, she did not—based upon the facts alleged in the motion for reconsideration—exercise due diligence to discover the "facts supporting the claim or claims presented" in her § 2255 motion. In other words, petitioner could have through the exercise of due diligence discovered her ex-husband's plea agreement and the letter written by the AUSA to her counsel with respect to her cooperation efforts prior to her incarceration; instead, petitioner placed the box that contained her legal files into her garage and did not cause its contents to be examined until one year later after she was incarcerated. Petitioner argues that she did not examine the contents of the box that contained her legal files because of her parental responsibilities, "[she] was due to report to

prison on May 1, 2014," and her "ex-husband was placed in Hospice care around the same time." (ECF No. 143 at 2.)

Petitioner in her § 2255 motion explained that that the year following her sentencing in this case was filled with turmoil because she cared for her mother, terminally ill ex-husband, and their young daughter, who struggled with her father's illness and mother's impending jail sentence. The court held in its opinion denying petitioner's § 2255 motion, however, that petitioner's explanation for untimely filing the § 2255 motion was tragic, but does not fall within any of the circumstances set forth in § 2255(f)(2)-(4). The court held that under those circumstances the statute of limitations began to run on the date on which the judgment of conviction entered against petitioner became final.[2] (ECF No. 141 at 4 n.3.) Petitioner in her motion for reconsideration did not present to the court any basis upon which to reconsider that decision, i.e., petitioner did not show that a manifest injustice would result if the court did not reconsider that decision. Petitioner's motion for reconsideration will, therefore, be denied.

### 3. The claims asserted by petitioner in her § 2255 motion are not supported by her ex-husband's plea agreement.

Even if the court were to disregard petitioner's conflicting allegations with respect to when she first examined the contents of the box containing her legal files, § 2255(f)(4) would not apply to any claim asserted in her § 2255 motion because she did not present any claims

---

[2] Petitioner filed her § 2255 motion on August 18, 2015. Under those circumstances, even if she discovered her ex-husband's plea agreement and the letter from the AUSA to her counsel on April 30, 2014—the latest date on which petitioner asserts she received the box containing her legal files—her § 2255 motion was untimely filed because August 18, 2015, is more than one year after April 30, 2014. 28 U.S.C. § 2255(f)(4).

9

*supported by* her ex-husband's plea agreement. Petitioner in her § 2255 motion quoted one sentence from her ex-husband's plea agreement in support of one of her claims of ineffective assistance of counsel. (ECF No. 139 at 65.) The sentence quoted provides that petitioner's ex-husband agreed to assist law enforcement officers in investigating "Howard Reck and others." (Id.) Petitioner argued that her "personal Cooperation against Howard Reck helped the FBIs [sic] efforts to investigate and prosecute Howard Reck," but her counsel did not provide "specific information to the Court" about the extent of her cooperation.[3] (Id.) Under those circumstances, petitioner's ineffective assistance of counsel claim is not supported by her ex-husband's plea agreement; rather, it is based upon her argument that her counsel did not present to the court the full extent of her cooperation against Howard Reck ("Reck"), which is an argument that she could have raised without ever discovering the contents of her ex-husband's plea agreement.

Petitioner at the time she was sentenced, i.e., prior to the judgment of conviction entered against her becoming final, would have known: (1) all the information she provided to the FBI about Reck; (2) that her counsel did not present all that information to the court;[4] (3) that the government gave her ex-husband credit for cooperating in the investigation and

---

[3] Petitioner's counsel presented argument, documents, and testimony to the court with respect to petitioner's cooperation against Howard Reck. (ECF No. 89, 106; H.T. 2/22/2013 (ECF No. 110) at 20, 37, 60, 61, 63, 79, 81, 82, 84, 91.)

[4] Petitioner's counsel filed on the court's docket a sentencing memorandum and supporting exhibits with respect to the extent of petitioner's cooperation. (ECF Nos. 89, 106.) Petitioner by the exercise of due diligence could have examined those filings prior to her incarceration in this case.

10

prosecution of other people;[5] and (4) in September 2012, this court sentenced her ex-husband to a term of imprisonment of fifteen months based upon criminal conduct the court found was "exactly the same" as petitioner's criminal conduct.[6] (H.T. 3/5/2013 (ECF No. 111) at 19-20.) Petitioner's ex-husband's plea agreement did not provide any information to petitioner or the court that was necessary for petitioner to assert her claim of ineffective assistance of counsel against her trial counsel for failing to present the entirety of her cooperation against Reck to the court. Based upon the foregoing, the court cannot conclude that petitioner's claim of ineffective assistance of counsel with respect to her cooperation against Reck is supported by her ex-husband's plea agreement.

Petitioner in her § 2255 motion also makes reference to the date on which her ex-husband signed his plea agreement. (ECF No. 139-1 at 10.) She accuses the AUSA who prosecuted her of prosecutorial misconduct for prolonging the criminal proceedings brought against her. (ECF No. 139-1 at 10.) Petitioner explained:

> By keeping Movant out of the indictment line up, Movants [sic] husband Jay Berger was free to cooperate without suspicion. Movants [sic]

---

[5] At petitioner's continued sentencing hearing held on March 5, 2013, the court and petitioner's counsel—in petitioner's presence—discussed the cooperation efforts of petitioner's ex-husband, including discussion about his plea agreement and that a motion pursuant to U.S.S.G. § 5K1.1 was filed on his behalf and his plea agreement. (H.T. 3/5/13 (ECF No. 111) at 18, 45, 46.)

[6] Petitioner in her motion for reconsideration argued that she was "not privy to what [her ex-husband] was sentenced to." (ECF No. 142 at 2.) Petitioner's ex-husband's sentence, however, was public record and the judgment setting forth his sentence was filed on the docket in his case. (Crim. Action No. 09-283, ECF No. 40.) This court openly discussed petitioner's ex-husband's sentence on the record in petitioner's presence during her sentencing hearing. (H.T. 3/5/13 (ECF No. 111) at 19 ("In September of 2012, this Court sentenced Jay Berger to 15 months incarceration.")). Under those circumstances, the record before this court belies petitioner's assertions that she did not know her ex-husband's sentence prior to the expiration of her rights to file a § 2255 motion in this case.

> husband signed his plea on [sic] around September 2008, Jay Berger's informational was recorded October 2010. Movant was indicted November 17, 2010. Movant lost 2 possible years of incarceration due to the Prosecutors [sic] actions.

(Id.) Based upon the record before this court, the government tendered to counsel for petitioner's ex-husband a plea agreement dated December 3, 2008. On October 2, 2009, petitioner's ex-husband was indicted. (Crim. Action No. 09-283, ECF No. 1.) On October 16, 2009, petitioner's ex-husband pleaded guilty and signed the plea agreement dated December 3, 2008. On November 17, 2009, petitioner was indicted. (ECF No. 1.) On November 10, 2010, petitioner pleaded guilty. (ECF No. 25.)

To the extent the date on which petitioner's ex-husband signed his plea agreement is relevant to her claim of prosecutorial misconduct by the AUSA, petitioner through the exercise of due diligence could have discovered the date on which her ex-husband pleaded guilty because it is recorded on the court's docket at criminal action number 09-283, and her ex-husband's plea agreement was discussed in open court in her presence during her sentencing hearing. (H.T. 3/5/13 (ECF No. 111) at 46.) Petitioner also would have known through her conversations with the government and the search warrant executed on the business she owned with her ex-husband that her conduct was of interest to the government prior to her indictment, and the date on which she was indicted and pleaded guilty. Under those circumstances, the court cannot discern a basis upon which to hold that § 2255(f)(4) is applicable to petitioner's claim of prosecutorial misconduct based upon the AUSA prolonging the proceedings against her.

> **4. Petitioner through the exercise of due diligence could have discovered the letter written by the AUSA to her counsel with respect to her cooperation**

> **efforts prior to her incarceration or more than one year prior to the date on which she filed her § 2255 motion.**

Even if the court were to disregard petitioner's conflicting assertions with respect to when she examined the contents of the box containing her legal files, § 2255(f)(4) does not apply to any claim allegedly supported by the letter from the AUSA to her counsel explaining the requirements of cooperation. On February 15, 2013, petitioner's counsel filed with the court the letter written by the AUSA to her counsel with respect to her cooperation efforts. (ECF No. 106-3.) Petitioner's counsel during petitioner's sentencing hearing—at which petitioner was present—questioned Joseph Bishelt, a case agent who investigated petitioner's criminal conduct in this case, about the letter from the AUSA to petitioner's counsel and in open court discussed its contents. (T.T. 2/22/13 (ECF No. 110) at 31.) Under those circumstances, § 2255(f)(4) does not apply to petitioner's case because even if petitioner did not receive the letter from her counsel, the letter was publicly filed in her case and discussed in open court in her presence. Petitioner through the exercise of due diligence, therefore, would have discovered the letter, i.e., the facts upon which some of her § 2255 claims are allegedly based, prior to the judgment becoming final in her case or—at the very latest—more than one year before she filed her § 2255 on August 18, 2015. Section 2255(f)(4), therefore, does not apply to any claim asserted by petitioner that is based upon the letter the AUSA wrote to her counsel, and the statute of limitations with respect to those claims began to run on the date on which the judgment entered against her became final.

## V. Conclusion

Based upon the foregoing, petitioner did not show that a manifest injustice will result if the court does not reconsider its decision to deny her § 2255 motion as untimely filed

under § 2255(f)(1). Petitioner's motion for reconsideration (ECF No. 143) will, therefore, be denied. An appropriate order will be entered.

## VI. Certificate of Appealability

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination about whether a certificate should issue. See 3d Cir. LAR. 22.2.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v McDaniel, 529 U.S. 473, 484-85 (2000).

Based upon the motion, files and records of the instant case, and for the reasons set forth above, the court finds that petitioner did not show a denial of a constitutional right. Therefore, a COA should not issue.

An appropriate order will be entered.

BY THE COURT,

Dated: May 10, 2016

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief District Court Judge

cc:  Vasilia Berger
     30465-068
     Federal Prison Camp
     P.O. Box A
     Alderson, WV 24910

14