IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | ) Criminal No. 09-308 |
| | ) |
| VASILIA BERGER, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**CONTI, Senior District Judge.**

**I.      Introduction**

Pending before the court is a motion for early termination of supervised release filed by defendant Vasilia Berger ("Berger"). (ECF No. 170.) Berger argues that her term of supervised release should be terminated because she is abiding by conditions of supervised release and being on supervised release prevents her from obtaining life insurance and a real estate license in Pennsylvania. (Id.) The government responded to Berger's motion arguing, among other things, that early termination of her term of supervised release is not warranted by the factors set forth in 18 U.S.C. § 3553(a) or in the interest of justice because, among other reasons, Berger's "egregious" criminal conduct warrants the completion of the entire three-year-term of supervised release and her arguments about obtaining a real estate license are based upon speculation. (ECF No. 172.) For the reasons set forth in this opinion, including the court's consideration of the factors set forth in 18 U.S.C. § 3553(a) and the interest of justice, Berger's motion for early termination of supervised release will be denied without prejudice.

**II.     Procedural History**

On November 10, 2010, Berger pleaded guilty to wire fraud conspiracy, a violation of 18 U.S.C. § 1349, and money laundering conspiracy, a violation of 18 U.S.C. § 1956. On March 5, 2013, this court held a sentencing hearing. The court recognized that Berger's sentencing guideline range for a term of imprisonment based upon her offense conduct, *which included consideration of the $6,694,745.27 of loss caused by her criminal conduct and other applicable enhancements*, was 292 months to 365 months. The court, however, imposed a term of imprisonment upon Berger outside the sentencing guidelines and determined that it would be appropriate to vary within a sentencing guideline range of 78 months to 97 months. The court explained that when it sentenced Berger's codefendant and husband, Jay Berger, who was charged with the same criminal conduct as Berger, the court was apprised of 2 enhancements, which added 6 levels to his offense level. The resulting sentencing guideline range was 78 months to 97 months. When the court sentenced Berger, however, the government argued for at least 5 enhancements, which added 30 levels to her offense level. The enhancements were based upon evidence that the government was aware of at the time of Jay Berger's sentencing. Under those circumstances, if the court imposed a sentence in accordance with the applicable guideline range of 292 months to 365 months, an unwarranted sentencing disparity would arise between Berger and Jay Berger. The court, therefore, varied from the applicable sentencing guideline range to the sentencing guideline range applicable to Jay Berger. The court sentenced Berger to a term of imprisonment of 78 months at each count, to concurrently run, for a total term of imprisonment of 78 months, and a term of supervised release of three years (36 months) at each count, to concurrently run, for a total term of supervised release of

three years, restitution in the amount of $871,669.81, to be paid jointly and severally with Berger's codefendants, and a special assessment of $100 at each count, for a total special assessment of $200.

According to Berger, she served her term of imprisonment at Federal Prison Camp Alderson from September 1, 2014 to October 28, 2018, she began her term of supervised release on April 26, 2019, and her term of supervised release will expire on April 25, 2022. (ECF No. 170 ¶¶ 2-3.) Based upon those representations, Berger has served approximately twenty-five months of the thirty-six-month term of supervised release imposed upon her by this court.

On March 27, 2021, Berger filed the pending motion for early termination of supervised release. (ECF No. 170.) On April 5, 2021, the government filed its response in opposition. (ECF No. 172.) On April 7, 2021, this court ordered Berger to file a reply brief to explain how her term of supervised release is an impediment to obtaining a real estate license. On April 19, 2021, Berger filed the reply brief. (ECF No. 174.) Berger's motion having been fully briefed is now ripe to be decided by the court.

### III.   Discussion

#### A.  Applicable Law

A district court has the discretion to grant the early termination of a defendant's term of supervised release[1] under 18 U.S.C. § 3583(e). United States v. Melvin, No. 20-1158, 2020 WL 6108619, at *3 (3d Cir. Oct. 16, 2020). Pursuant to § 3583(e):

[t]he court may, after considering the factors set forth in section

---

[1] Supervised release "serves an entirely different purpose than the sentence imposed under § 3553(a)." Pepper v. United States, 562 U.S. 476, 502 n. 15 (2011). It "fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000).

> 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
>> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1). As specified in § 3583(e)(1), in exercising its discretion, the district court must consider the following factors:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

"After considering these factors, the court may provide relief only if it is satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." Melvin, 2020 WL 6108619, at *3. District courts need not make specific findings of fact with respect to each § 3553(a) factor; it is sufficient for the court to state that it considered the statutory factors. Id.

4

The Third Circuit Court of Appeals has clarified that the *general rule* is that early termination of a term of supervised release under § 3583(e)(1) "will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." Id. (quoting United States v. Davies, 746 F. App'x 86, 89 (3d Cir. 2018), cert. denied, 139 S. Ct. 1275, 203 L. Ed. 2d 280 (2019)). The court of appeals in Melvin explained:

> That is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.

Id. The court of appeals, however, "disavow[ed] any suggestion that new or unforeseen circumstances ***must*** be shown." Id. (emphasis added).[2] In other words, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." Id. The district court must be "satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." Id. (quoting 18 U.S.C. § 3583(e)(1)).

The court will consider the pertinent factors set forth in § 3553(a) as instructed in § 3583(e)(1) to determine whether early termination of Berger's term of supervised release is warranted by his conduct and in the interest of justice.

### B. Section 3553(a) Factors

#### 1. The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1)

---

[2] The court of appeals explained that the language in United States v. Laine, 404 F. App'x 571, 573-74 (3d Cir. 2010), that "early termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it," is not based upon the statute and is not binding precedent. Melvin, 2020 WL 6108619 at *3.

As the court acknowledged at the time of sentencing, Berger committed very serious offenses that caused harm to many people and warranted a significant period of incarceration. With respect to Berger's characteristics, at the time of sentencing she had the support of many people, was the caregiver to her minor daughter, and her husband and codefendant, Jay Berger, was terminally ill. The court has since learned that Jay Berger passed away. Berger is the sole caregiver to their minor daughter. Berger has been employed in a full-time capacity as a "paralegal, marketing liaison, and, office administrator" to a small law firm, which has plans to close. Her employer wrote a letter to the court in support of her motion for early termination of supervised release and described Berger as "honest, responsible, accountable, sincere, hard-working [sic], loyal, dedicated, moral and caring." (ECF No. 170-2 at 1.)

Berger is seeking new employment as a real estate agent, and Fox Chapel Real Estate agreed to serve as Berger's "employing broker" for her real estate license. (ECF No. 170 ¶ 7.) Berger argued in her motion that her term of supervised release serves as an impediment to obtaining her real estate license. The court provided Berger an opportunity to explain how her term of supervised release hinders her ability to obtain a real estate license. According to Berger, the Pennsylvania Real Estate Commission (the "Commission") requires applicants for a real estate license to disclose their criminal history, and, if they are under the supervision of a probation officer, the probation officer must submit a letter to the Commission detailing the applicant's status and date of completion of the term of supervision. (ECF No. 174 at 2 (citing ECF No. 174-1 at 1-4.) According to Berger, her criminal history places her at a "severe disadvantage" to applicants without a criminal history. (ECF No. 174 at 2.) Whether this court grants

Berger's request for early termination of her supervised release, however, she will have a criminal history based upon her convictions in this case. She has not otherwise shown how her current term of supervised release will prevent her from obtaining a real estate license.

To the extent Berger argues that the conditions of supervised release will impede her ability to *work* as a real estate agent, (ECF Nos. 170 at 2, 174 at 2), she may request modification of the terms of her supervised release if she is able to show a modification is warranted once she is employed as a real estate agent. At this stage, however, she did not show that the conditions of her supervised release will prevent her from obtaining a real estate license, and the court will not speculate about how the terms of her supervised release may impact her work as a real estate agent at some point in the future. The documents Berger submitted to the court from the Commission do not show that Berger will be denied a real estate license merely because she is serving a term of supervised release; rather, the documents show that she is required to disclose her criminal history and the completion date for her term of supervised release to the Commission.

According to Berger, she attempted to purchase life insurance but was informed she could not purchase life insurance until one year after her term of supervised release expired. (Id. ¶ 5; ECF No. 170-1 at 2.) Berger's inability to obtain life insurance at this time from one insurance company, i.e., State Farm (ECF No. 170-1 at 2.), is not a sufficient basis to grant early termination of supervised release. As the court in recognized in United States v. Grimaldi, 482 F. Supp. 2d 248 (D. Conn. 2007), although a defendant may not have been aware of the impact that a term of supervised release

may have on his or her ability to obtain life insurance, the inability to obtain life insurance "is not a new circumstance" or an unique circumstance that warrants early termination of supervised release. United States v. Grimaldi, 482 F. Supp. 2d 248, 250 (D. Conn. 2007) (denying the defendant's motion for early termination of supervised release based upon a 300% increase in his life insurance premium).[3]

Berger asserts—and the government did not contest—that she continues to comply with her restitution obligations to the victim of her crime. (ECF No. 170 ¶ 8.) Berger's probation officer does not object to her request for termination of her supervised release. (Id. ¶ 11.)

Based upon the information presented to this court, Berger has led a law-abiding life since her release from imprisonment. She has maintained employment and is caring for her minor daughter. The serious nature of her crimes, including the substantial monetary loss caused by the crimes, however, weighs against the early termination of her term of supervised release.

> ***2. The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, §§ 3553(a)(2)(B)-(D)***

The applicable guideline range for a term of supervised release is 1 year to 3 years. The court imposed upon Berger a term of supervised release of 3 years. She

---

[3] The analysis in Grimaldi focused—in part—on the fact that the increase in the life insurance premium for the defendant based upon his term of supervised release was not a "new circumstance." As discussed above, changed circumstances are not required for a court to grant a term of supervised release; rather, the court must be satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice.

served approximately two-thirds of that time. Considering the enormous amount of loss caused in this case by Berger, a three-year term of supervised release is still warranted to afford adequate deterrence to criminal conduct.

### 3. The sentencing range established by the Sentencing Commission, § 3553(a)(4)

As discussed above, the court departed outside the sentencing guidelines to avoid unwarranted sentencing disparities when it imposed upon Berger a term of imprisonment of 78 months at each count, to be concurrently served. With respect to the term of supervised release, the sentencing guidelines provided a term of supervised release of 1 year to 3 years. Thus, the court sentenced Berger to the high-end of the range for a term of supervised release. The term of supervised release of 3 years was necessary because, among other things, the significant departure granted to Berger with respect to her terms of imprisonment and the need to deter others from partaking in similar criminal activity.

### 4. Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5).

No pertinent policy statements were raised by the parties with respect to this matter.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).

This factor was relevant at the time of sentencing with respect to Berger's sentencing guideline range for a term of imprisonment. At this stage, there is no evidence that Berger's term of supervised release should be terminated to avoid

unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

### 6. The need to provide restitution to any victims of the offense, § 3553(a)(7).

Berger's restitution obligation remains outstanding. She reports to the court that since her release from imprisonment, she "has been paying restitution to PNC Bank in the amount of 10% of her gross income." (ECF No. 170.) The government does not dispute this representation; rather, it argues that because Berger cannot pay her restitution obligation *in full*, she should serve the entirety of her sentence. (ECF No. 172 at 5.) Continuing the term of supervised release provides assurance that Berger will continue to pay restitution over the next 11 months.

### C. Whether early termination is warranted and in the interest of justice

As discussed above, Berger did not show that her term of supervised release—as opposed to her criminal history—will prevent her from obtaining a real estate license, and her inability to obtain life insurance until one year after the completion of her term of supervised release does not warrant the early termination of her supervised release in light of the enormous loss caused by her criminal conduct.

Berger also argues that she has complied with the conditions of supervised release, e.g., she is gainfully employed, pays restitution, and provides for her minor daughter. (ECF No. 170 at 2.) Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is *required* behavior while serving a term of supervised release. United States v. Banks, No. 04-176, 2015 WL 926534, at *4 (W.D. Pa. Mar. 4, 2015) (citing United States v. Medina, 17

F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [the defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.")). The fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community. For example, Berger is abiding by the law, gainfully employed, and satisfying her restitution obligations, which are all required by the sentences and conditions of supervised release imposed upon her by this court.

Berger's conduct and desire to better herself and provide for her daughter by obtaining a real estate license and life insurance are commendable, but, considering the foregoing § 3553(a) analysis, especially the serious nature of her crimes, the need to deter criminal conduct, and the significant departure in the term of imprisonment granted to her at the time of sentencing, the interest of justice is best served by her completing her term of supervised release.

### IV.  Conclusion

Based upon the foregoing, the court will deny the motion for early termination of supervised release (ECF No. 170) without prejudice. In the event Berger's circumstances change, she may file another motion for early termination of supervised release.

An appropriate order follows.

BY THE COURT:

Dated: June 9, 2021

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge